BOYNTON CAB COMPANY, Appellant, vs. NEUBECK and INDUSTRIAL COMMISSION, Respondents.

*February 4—March 11, 1941.*

250

For the appellant there was a brief by *Dougherty, Arnold & Kivett,* attorneys, and *Suel O. Arnold* and *Michael H. Keelan* of counsel, all of Milwaukee, and oral argument by *Mr. Keelan* and *Mr. Arnold.*

*Stanley Rector* and *Arthur Barber,* both of Madison, for the respondent Industrial Commission.

Briefs *amici curiæ* were filed by *E. L. Wingert* of Madison, on behalf of the State Advisory Committee on Unemployment Compensation; by *Padway, Goldberg & Tarrell* of Milwaukee, on behalf of the Wisconsin Federation of Labor; and by *R. M. Stroud* of Madison, on behalf of the Wisconsin Manufacturers Association.

FRITZ, J.   The Boynton Cab Company appeals from a judgment affirming a decision of the Industrial Commission by which it adopted and affirmed a decision of an appeal tribunal designated under sec. 108.09 (3), Stats., which allowed unemployment benefits under ch. 108, Stats., to be paid to Walter Neubeck. He had been employed as a taxicab driver by appellant from January 6, 1939, until he was discharged on February 25, 1939. He filed a claim for unemployment benefits, and pursuant to an inquiry made by the

commission under sec. 108.09 (1), Stats., appellant rejected the claim by a letter stating,—

"Walter Neubeck was discharged on 2/25/29 for his entire bad record of violations of company rules, had been given many warnings for these violations which are as follows:

"1939—1/23, made a trip from N. 38th St. to N. 25th St., charged passenger 40c, only turning in 25c to the company. A new man, was given warning, made to pay the balance and let go back to work.

"2/5, talked to and warned about low earnings per mile and low bookings. (Withdrawn at hearing.)

"Accidents: 2–17, 2–25, 2–23."

Under sec. 108.09 (2), Stats., the commission designated a deputy who made an "initial determination" that Neubeck's discharge was not for such misconduct as to render him ineligible for benefits by reason of the provision in par. (a) of sec. 108.04 (4), Stats. Pursuant to appellant's request for a hearing in relation to the disputed claim, the commission designated an appeal tribunal, which upon the testimony taken at a hearing held under sec. 108.09 (3) to (5), Stats., filed findings of facts and a decision affirming the "initial determination" and allowing benefits accordingly. Upon a review thereof by the commission, it adopted and affirmed the tribunal's finding and decision. Appellant then brought an action in the circuit court to set aside the commission's determination and award of unemployment benefits and upon the entry of judgment affirming the decision of the commission and the tribunal, this appeal was taken from the judgment.

The only error assigned by appellant is that the court erred in refusing to vacate and set aside the commission's determination and award on the ground that it was not supported by credible evidence. In relation to Neubeck's accidents and record of violations of appellant's rules, because of which it claims he was guilty of such misconduct as to

bar him under sec. 108.04 (4) (a), Stats., from receiving unemployment benefits, there was evidence on the hearing before the tribunal in respect to the rules by which appellant's drivers were required to promptly report all accidents, and also in respect to layoffs in employment for various different kinds of accidents. Neubeck had three minor traffic accidents during the eight weeks of his employment by appellant. He did not report the first accident on February 17th, which did not result in any material damage, but as to which the appellant was notified by the driver of the other car in the collision. Neubeck was not laid off then. He promptly reported a collision on February 23d, but he did not state, as required by appellant's rule, that there had been personal injury. He claims he had no knowledge thereof until appellant was notified about the injury on March 4th by an attorney, who presented a claim therefor which, including $12.50 for automobile repairs, was compromised at $90. Again Neubeck was not laid off but was told he would be discharged if he had another accident. Appellant's foreman testified that if he had known of the personal injury he would have discharged Neubeck on February 23d. The third accident happened on February 25th while Neubeck was driving down a ramp in appellant's garage and the car skidded down and into the street where it collided with another automobile. There was ice on the ramp and Neubeck claims that the clutch stuck. The foreman took him to the superintendent and recommended dismissal, and he was then discharged. In respect to these accidents and the reporting of them the tribunal found:

"It appeared that the employee was partly responsible for the accidents. However, in view of the hazards and responsibilities of his employment, the employee's record of accidents did not show an unreasonable and improper course of conduct from which could be imputed a lack of showing proper regard for the employer's interests."

In relation to the charge that Neubeck turned in only twenty-five cents of forty cents which he charged a passenger, there was evidence to the following effect on the hearing before the tribunal. On January 23d Neubeck collected forty cents as fare from the passenger, but reported only twenty-five cents on a trip sheet, which appellant's rules required him to keep. The passenger telephoned to the appellant's office and claimed that there was an overcharge of fifteen cents. When appellant's supervisor spoke to Neubeck about his having collected forty cents, he claimed that he had forgotten to enter that amount on the trip sheet and to turn in the fifteen cents, and also claimed that he thought that the additional charge of fifteen cents was proper because he had crossed into a second zone. He asked the supervisor whether he should return the fifteen cents, and gave the money to the supervisor when he replied, "You better give me fifteen cents and I will go to that party and return the fifteen cents." The supervisor then gave Neubeck a "hold slip," which required him to report to the superintendent before taking out a cab, and the superintendent apparently accepted Neubeck's explanation that the overcharge was due to a mistake, and that his failure to turn in the fifteen cents was due to oversight and inadvertence on his part. Neubeck does not appear to have been accused of dishonesty at that time; and he was not then discharged, although the overcharge was made within the probationary period of four weeks, during which he could have been discharged without becoming entitled to unemployment benefits. The tribunal found, in relation to the overcharge and withholding of fifteen cents, that,—

"About three weeks after the employee was hired he withheld part of a fare. When the matter was brought to his attention he explained that he had done so inadvertently. The employer accepted his explanation at the time and nothing of a similar nature occurred at any time during the balance of his employment."

And in relation to this transaction, as well as Neubeck's conduct in respect to the three accidents and his reports thereof, the tribunal found that Neubeck "was not discharged for misconduct connected with his employment within the meaning of sec. 108.04 (4) (a) of the statutes."

In so far as the overcharge and withholding of the fifteen cents item is concerned, the evidence reasonably admitted of the tribunal's findings that the appellant accepted Neubeck's explanation at the time of the transaction in January, 1938, and that nothing of a similar nature occurred during the balance of his employment. These facts and appellant's retention of Neubeck in its employment for four weeks thereafter warrant the tribunal's determination that the discharge on February 25th was not for any misconduct in connection with the fifteen cents item. Likewise, the evidence admitted of the tribunal's finding that, although Neubeck was partly responsible for the three minor accidents, nevertheless, in view of the hazards and responsibilities of his employment at the time, his "record of accidents did not show an unreasonable and improper course of conduct from which could be imputed a lack of showing proper regard for the employer's interests." In this connection it is of significance that Neubeck's failures to report the first accident, and also the personal injury of which he did not know when he reported the second accident, were apparently not considered by appellant to be such serious violations of its rules as to warrant a layoff at the times it learned of them. Under these circumstances neither the violations nor the accidents in question compel the conclusion that the tribunal erred in determining that Neubeck's record of the accidents did not show an unreasonable and improper course of conduct because of which there could be imputed a lack of showing proper regard for the appellant's interests.

However, notwithstanding the tribunal's determination in the respects stated above, appellant contends that if Neubeck was negligent in the operation of the taxicab and was there-

fore partly responsible for the accidents and was discharged therefor, then his discharge was for misconduct within the meaning of that term as used in sub. (4) (a) of sec. 108.04, Stats., which provides that "an employee's eligibility for benefits . . . shall be barred for any week of unemployment completed after: (a) He has been discharged by the employer for misconduct connected with his employment. . . ." In support of this contention it is argued that,—

"if an employer discharges an employee for negligence, he discharges such employee for misconduct. The term negligence connotes fault. Implicit in the term is the idea that the person guilty of negligence has failed to comply with the standards of care which are observed by the great mass of mankind under the same or similar circumstances. With certain exceptions not here material where the law, by statute or otherwise imposes liability without fault of the party against whom the liability is alleged to exist, it is impossible for a person to be negligent unless he violates the standards of care which have been developed and promulgated for the protection of individuals in a highly complex society. A violation by a taxicab driver of the standards of care which constitutes negligence is likewise a violation of the rules of the plaintiff. . . . None of the rules are arbitrary and it would seem too clear for argument that if an employee is discharged for the violation of any of these rules, he is discharged for misconduct."

On the other hand, it is contended on behalf of the defendants that every morally and legally justifiable discharge is not necessarily a discharge for "misconduct;" and that the intended meaning of the term "misconduct" as used in sec. 108.04 (4) (a), Stats., is limited to conduct evidencing wilful disregard of an employer's interests. In this connection it is argued that the element of wilfulness is found in both intentional violations of standards of behavior which an employer has a right to expect of his employees, and carelessness of such degree as to manifest equal culpability; but that mere inefficiency, the failure to do a good job because of inability

or incapacity, ordinary negligence in isolated cases, good-faith errors in judgment, and inadvertencies are not to be deemed "misconduct" within the meaning of the term as used in sec. 108.04 (4) (a), Stats.

It is true that under the common, approved usage of the word "misconduct," several meanings are equally within the scope thereof. That is evidenced by such definitions of the word as the following:

"Bad behavior; improper conduct; mismanagement; wrong behavior; wrong conduct; any improper or wrong conduct; in usual parlance, a transgression of some established and definite rule of action, where no discretion is left, except what necessity may demand. 'Misconduct' does not necessarily imply corruption or criminal intention. The term implies a wrongful intention, and not a mere error of judgment. It is said to be synonymous with 'delinquency;' 'misbehavior;' 'misdeed;' 'misdemeanor;' 'mismanagement;' 'offense;' and distinguishable from 'carelessness.' " 40 C. J. p. 1220, § 1.

Because of these conflicts in the meanings which are attributable to the word misconduct, there exists such ambiguity and room for doubt as to the meaning which the term was intended to have, as it is used in sec. 108.04 (4) (a), Stats., that it is necessary and proper to resort to rules for judicial construction in order to discover what meaning was intended by the legislature. When there exists such an ambiguity or doubt that it becomes necessary to construe the statute in order to discover its true meaning, the sole object and most dominant principle of statutory construction is to ascertain and give effect to the intended meaning of the legislature, and its intention and meaning must be determined, if possible, primarily from the statute itself; and where the language thereof is capable of more than one interpretation it must be read in the sense which is in harmony with the subject matter, and the general purpose and object of the legislature in enacting the statute, and must be given a fair and reasonable

construction with the view of effecting that purpose and object. *Julius v. Druckrey,* 214 Wis. 643, 254 N. W. 358; *Lawrence v. Vilas,* 20 Wis. \*381, \*386; *Miller v. Chicago & N. W. R. Co.* 133 Wis. 183, 113 N. W. 384; *State ex rel. Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 137 Wis. 80, 85, 117 N. W. 846; *McCarthy v. Steinkellner,* 223 Wis. 605, 615, 270 N. W. 551, 271 N. W. 374.

In general, it is evident, in view of the public-policy declaration (sec. 108.01) and other provisions in ch. 108, Stats., that the intended purpose and object of providing for the payment of unemployment compensation is to cushion the effect of unemployment by a series of benefit payments to a worker in the event of his unemployment for a period of time. These payments are to accrue to all covered workers who are "eligible" under the statute, subject however to the provision in par. (a) of sec. 108.04 (4), above quoted, by which an employee's eligibility for benefits is barred after "he has been discharged by the employer for misconduct connected with his employment." Under and by reason of this provision the benefit rights acquired by an employee during the course of his employment by an employer may be entirely lost by the employee's conduct in case of his discharge for "misconduct." Thus there is imposed by this provision, when it is operative, a forfeiture or penalty on the employee. If mere mistakes, errors in judgment or in the exercise of discretion, minor and but casual or unintentional carelessness or negligence, and similar minor peccadilloes must be considered to be within the term "misconduct," and no such element as wantonness, culpability or wilfulness with wrongful intent or evil design is to be included as an essential element in order to constitute misconduct within the intended meaning of the term as used in the statute, then there will be defeated, as to many of the great mass of less capable industrial workers, who are in the lower income brackets and for whose benefit the act was largely designed, the principal pur-

pose and object under the act of alleviating the evils of unemployment by cushioning the shock of a layoff, which is apt to be most serious to such workers. In view of these consequences which would thus result if the provision as to misconduct, under which an employee may become subjected to the forfeiture, must be deemed applicable to all types of "misconduct" that can be considered to be within the broad scope of that term (as defined in the above quotation from 40 C. J. p. 1220), and in view of the ambiguous or doubtful import in its meaning as used in the statute, it is necessary and proper to resort to the rule that statutes providing for forfeitures are to be strictly construed and terms and provisions therein, which are ambiguous or of doubtful meaning, will be given the construction which is least favorable to working a forfeiture, so as to minimize the penal character of the provision by excluding rather than including conduct or cases not clearly intended to be within the provision. "Where the purpose is uncertain, the language should be read strictly to soften its severity; where otherwise, it would express a meaning which would be unreasonably harsh." *State v. Helmann,* 163 Wis. 639, 643, 158 N. W. 286; *Hammel v. Cairnes,* 129 Wis. 125, 107 N. W. 1089; *Miller v. Chicago & N. W. R. Co.* 133 Wis. 183, 113 N. W. 384; *Weirich v. State,* 140 Wis. 98, 121 N. W. 652; *Krom v. Antigo Gas Co.* 154 Wis. 528, 140 N. W. 41, 143 N. W. 163; *Oconto County v. Union Mfg. Co.* 190 Wis. 44, 208 N. W. 989; *Calvetti v. Industrial Comm.* 201 Wis. 297, 230 N. W. 130. The application of these principles leads to the conclusion, in view of the matters to be taken into consideration, as stated above, that the intended meaning of the term "misconduct," as used in sec. 108.04 (4) (a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal cul-

pability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

Similar conclusions were reached in decisions by the British umpire, established by parliament for the ultimate review of decisions by the court of referees in matters relating to unemployment compensation, under the English Act, sec. 8 (2), 20 Halsbury's Statutes of England, p. 662. This act, in so far as it provides for the benefit penalty on "An insured contributor who loses his employment through his misconduct," is substantially like the provision that "no such benefits shall be payable to the employee . . . (a) If he has lost his employment through misconduct," which was originally in sec. 108.04 (5) (a) in the Unemployment Compensation Act, ch. 20, Laws of Sp. Sess. 1931–32. In case No. 2835/1927, 6 Eng. U. I. Sel. Dec. p. 195, the British umpire, in allowing unemployment benefits to an employee, who had fixed five hundred wrong labels to tins, stated the following for the guidance of lower tribunals :

"It should be noticed that the term used in the statute is 'misconduct' and not 'unsatisfactory conduct.' . . .

"This case affords an illustration of a not uncommon cause of loss of employment and it may be useful to consider when negligence, carelessness or mistake can properly be regarded as misconduct. It is not safe to do more than deal with the subject on broad lines because misconduct is always a question of fact which depends upon an infinite variety of circumstances, including the past record and general character of the alleged delinquent.

"As a general rule it may be said that a single instance of negligence or mistake is not sufficient evidence of misconduct. . . . The present case falls within this category.

"But to this rule there are exceptions . . . and when the direct consequences of an act or omission are fairly obvious to an applicant, and are such as to be likely to cause serious loss to the employer, his business or his property, a finding of misconduct is not unreasonable. . . .

"But though one instance of negligence or mistake may not amount to misconduct, a recurrence or repetition of the act or of other acts may indicate a culpability which may fairly be described as misconduct. I think that point is reached when it can be said that the behavior of the applicant shows a wanton or deliberate disregard of his employer's interests or of applicant's duties. . . . Here, again, is a question of fact to be determined upon consideration of all the circumstances. The standard or test will not be the same in all cases. It will vary with the degree of responsibility or skill which the employee is engaged to exercise. The number of warnings given may be an important factor and the evidence of them should be definite. . . . In any case misconduct must be proved and not assumed."

In connection with allowing benefits in case No. 740/1928, Eng. U. I. Sel. Dec. (1930 ed.) p. 38, to an apprentice who had been dismissed for careless work in not following blueprint instructions, the umpire said:

"The best conclusion to which I can come on the evidence is that the employers found, as indeed they say, that applicant was an irresponsible type of youth, who, without being deliberately careless, lacked that amount of concentrated care and attention to details which are essential to the making of a mechanic, and they, therefore, decided to get rid of him."

In allowing benefits in case No. 5534/1923, 3 Eng. U. I. Sel. Dec., pamphlet No. 29, p. 4, to a newspaper compositor, who had recently made several costly errors, the last of which was particularly costly, the umpire said:

"The applicant appears to have made an error in his work as a compositor. It is not suggested that it was made deliberately, and during the four years he had been with the employers his work had been satisfactory. Through carelessness on the part of someone in not revising the proof the conse-

quences to the employers were serious; but I cannot see that there was any misconduct on the part of the applicant."

In allowing benefits in case No. 1518/1928, Eng. U. I. Sel. Dec. (1930 ed.) p. 91, to a bus driver who was found to be at some fault in the performance of his duties, and had been involved in a street accident and prosecuted for driving a motor car to the public danger, the umpire said:

"The employers state that their reason for dismissing the applicant was that they could not continue to employ him in view of the need for more than the average reliability on the part of drivers of public-service vehicles. They also state that this is the first occasion of any serious importance on which they have had to find fault with the applicant's driving, and that his conduct on the whole has been satisfactory.

"Applying the principles laid down in Decision 2835/27 I am not satisfied that the applicant has been guilty of misconduct within the meaning of" the unemployment insurance act.

Conclusions to virtually the same effect are stated in Memorandum No. 3, "Principles Underlying Disqualification for Benefits in Unemployment Compensation," Part II, "Voluntary Leaving and Misconduct" by the Federal Security Agency in tentatively defining,—after an analysis by the Social Security Board,—the phrase "misconduct connected with his work," as used in unemployment compensation laws.[1]

---

[1] Memorandum No. 3. "Principles Underlying Disqualification for Benefits in Unemployment Compensation," Part II, "Voluntary Leaving and Misconduct:"

" 'Misconduct connected with his work,' as the phrase is used in the unemployment compensation laws, may be tentatively defined as a deliberate act or omission by the worker which constitutes a material breach of his duties and obligations arising out of the contract of employment, or as an act or course of conduct, in violation of the employee's duty which is tantamount to an intentional disregard of the employer's interests."

Supplemental observations:

"Gross and serious carelessness in even a single instance, or repeated acts of negligence, or a continued course of indifference toward work, particularly after repeated warnings, may be tantamount to an intentional disregard of the employer's interests so that they

It follows, for the reasons stated above, that neither Neubeck's violations of appellant's rules in failing to properly report two of his accidents, nor his record in respect to accidents, which the tribunal found did not show an unreasonable and improper course of conduct from which could be imputed a lack of showing proper regard for the employer's interests, constituted misconduct within the meaning of the term as used in sec. 108.04 (4) (a), Stats.; that consequently the tribunal was warranted in determining that he was not discharged for such misconduct, and the commission was warranted in adopting this determination and allowing benefits accordingly; and that the court was not in error in entering judgment affirming the commission's decision.

*By the Court.*—Judgment affirmed.

constitute misconduct. In such cases it can be assumed that, although the worker may not have intentionally disregarded rules and instructions, his past behavior indicates in a general way that he is indifferent toward his obligations and his duties. It is, however, necessary to distinguish cases of negligence and carelessness from those in which a worker's failure to perform his duties results exclusively from inefficiency or inability due to circumstances over which the worker has no control such as poor training which, under the given circumstances, cannot be improved or lack of necessary mental or physical skill or experience. In the latter group of cases, the worker's behavior, although it might give cause for dismissal, is not misconduct."