Department of Employment Security
No. 84-013

APPEAL OF UNITED PARCEL SERVICE, INC.
(New Hampshire Department of Employment Security)

November 30, 1984

754

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Robert A. Wells* and *Kevin M. Fitzgerald* on the brief), by brief for United Parcel Service, Inc.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Debra L. Weiss* and *Michael C. Harvell* on the brief), by brief for the claimant, Peter Milliard.

PER CURIAM. The issue we decide in this unemployment compensation case is whether the Appellate Division of the New Hampshire Department of Employment Security exceeded its authority when it awarded compensation to the claimant, after the appeal tribunal had denied compensation based on a finding of misconduct connected with the claimant's work. We hold that it did.

The claimant, Peter Milliard, was employed by United Parcel Service, Inc. (UPS) as a delivery route driver. During his employment he received several warning notices for unsatisfactory job performance, and in 1981 his employment was terminated because of C.O.D. shortages and other failures to follow instructions and procedures. He filed a grievance through his union, and in March 1982, UPS agreed to rehire him after a three-day suspension on condition that he bring his job performance up to the minimum standards

expected of UPS employees. He failed to do this, and his supervisor was assigned to ride with him on April 15, 1982, to identify procedures as to which he was in non-compliance and to attempt to correct his performance. Claimant had required this kind of monitoring on several prior occasions. There is evidence that, on that day, claimant failed to comply with several required procedures and received instructions regarding them. It also appears that claimant continued to violate the same procedures even after instruction.

After violating one procedure with respect to which he had received repeated instruction, claimant mimicked the supervisor's prior instruction, to which the supervisor replied, "That's right, Pete. So why didn't you do it?" Claimant then attacked the supervisor, knocked him from the truck and struck him several times. He then attacked the supervisor three more times after the supervisor had retreated. Even after claimant broke off the attack and was walking away, he ran back to attack the supervisor again and threw a clipboard at him.

Claimant was discharged that day for physically assaulting his supervisor. He did not follow the grievance procedures with his union but did file a claim for unemployment compensation, giving as the reason for his termination "harrassment—for not speeding, taking lunch and breaks."

It was determined after investigation that the claimant was terminated for misconduct connected with his work under RSA 282-A:32, I(b) (Supp. 1983). He appealed to the appeal tribunal of the department of employment security. That body of three, with one dissenting, found that the "supervisor's methods of criticizing the claimant's work were very abrasive and so upset the claimant that he was not able to remember even the most routine procedures," and that "[a] couple of hours later the claimant physically attacked the supervisor and caused him bodily injury."

The majority found that "claimant's attack . . . was provoked by [the] supervisor's unrelenting harassment of the claimant which went beyond the requirements of normal work related instruction and constructive criticism and which the supervisor had every reason to believe could and would result in an explosive situation." The majority found, however, that "claimant could have resolved his immediate problem with his supervisor in a more acceptable manner" and that he was discharged for "misconduct connected with his work." The appeal tribunal accordingly denied benefits.

Claimant appealed to the appellate division, which stated, in an opinion, that in determining whether an employee had been guilty of misconduct it had adopted the test of *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941), requiring "wilful or

wanton disregard of an employer's interests." It stated that the issue in the case was whether the action of the supervisor was so provocative as to cause the employee to lose his ability to act in a "wilful" manner. It remanded the case to the appeal tribunal for a finding whether the claimant's misconduct was "wilful misconduct" as defined in *Boynton Cab*.

On remand, the appeal tribunal, after a hearing, in a unanimous opinion found that the "evidence clearly indicates the claimant attacked his supervisor wilfully and on more than one occasion with the specific intention of doing him bodily harm, and that the claimant was sufficiently possessed of his senses to have kept from attacking his supervisor initially, as well as to have broken off the attack as soon as it began instead of prolonging it to the extent that he did."

The appeal tribunal further found that the situation leading to the attack was not initiated by the supervisor, but was caused by the claimant through his own inattention to established procedures, and was one which he himself recognized as resulting from his own fault. The appeal tribunal then specifically found that the attack was "willful and constitutes misconduct" as defined in *Boynton Cab*.

The matter went again to the appellate division and was heard by a different panel of three, with one present only to make a quorum. This panel found that, although on remand the appeal tribunal had closely analyzed the acts of claimant, it had failed to consider the acts of his supervisor, and it reversed the decision as a matter of law.

The matter was reopened on motion of UPS and was heard by the appellate division *en banc*, which in an opinion recognized that it should not, under RSA 282-A:65 (Supp. 1983), substitute its judgment for that of the appeal tribunal as to the weight of the evidence or the prudence or desirability of the determination. It decided, however, that whether action by an employee amounts to misconduct is a legal conclusion which the appellate division may decide.

The appellate division recognized that under New Hampshire law words alone may not furnish sufficient provocation to justify a physical attack, citing *State v. Smith*, 123 N.H. 46, 49, 455 A.2d 1041, 1043 (1983) and *State v. Little*, 123 N.H. 433, 436, 462 A.2d 117, 118–19 (1983). It then cited a line of cases from the United States Supreme Court and one from this court which recognize, in a first amendment context, the existence of "fighting words" which tend to incite an immediate breach of the peace. Whatever relevance these cases may have on the issue in this case, there is no evidence of the actual words used by the supervisor, and the appellate division recognized that it could not engage in presumptions or speculation.

The appellate division nevertheless went on to state that there is

an implied covenant of good faith in all contracts, and that the supervisor in this case exceeded the normal boundary of instruction and "intentionally provoked the claimant." It then held, as a matter of law, that because the supervisor by design and intent caused the attack, the resulting attack did not constitute misconduct. It then ordered the department to determine the proper amount of compensation.

■ We are of the opinion that the appellate division exceeded its authority in making the finding of fact that the supervisor "by design and intent" caused the attack, and we therefore need not decide whether the existence of such an intent would prevent the claimant's response from amounting to "misconduct."

In *Appeal of Sturm, Ruger & Company, Inc.*, 124 N.H. 506, 474 A.2d 983 (1984), we stated that the court was not prepared to accept the test laid down in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941), requiring a "wilful or wanton disregard" of the employer's standards or "negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests." *Id.* at 259–60, 296 N.W. at 640. We did hold that disruptive behavior in response to ethnic slurs was not misconduct within the meaning of the statute. The disruptive acts in that case, however, did not involve physical attacks.

When the appellate division sent the case back to the appeal tribunal to consider whether the conduct of the supervisor "was such as to cause the claimant to lose his ability to act in a 'wilful' manner," the appeal tribunal, by finding again that the action of the claimant was willful, also made the implicit finding that the conduct of the supervisor was not such as to deprive the claimant of the ability to act willfully. This is a finding of fact which is binding on the appellate division, as well as on this court.

Nowhere in any of the proceedings prior to the last decision of the appellate division was there any suggestion that the supervisor had acted with the "design and intent" to cause the claimant to assault him and thus cause his discharge. Moreover, the question whether such a "design and intent" existed was a question of fact which the appellate division had no authority to make.

■■ We hold that absent such a "design and intent" no amount of verbal provocation can justify a physical assault, and that such an assault constitutes "misconduct" which justifies disqualification from benefits. Because there has been no proper finding that the supervisor did act with the design and intent to provoke a physical

attack, we need not decide whether such a finding would prevent an attack from constituting misconduct within the meaning of RSA 282-A:32, I(b) (Supp. 1983).

The appellate division also based its ruling on the alternative ground that the supervisor was negligent in the manner in which he corrected claimant, and that this constituted misconduct on his part which "begat further misconduct of claimant." Even granting negligence on the part of the supervisor, this would not justify the physical attacks involved in this case in response to mere words.

The decision of the appellate division is reversed and the decision of the appeal tribunal disallowing benefits is affirmed.

*Reversed.*