**Brenda S. LOEWEN, Relator,**

v.

**LAKELAND MENTAL HEALTH CENTER, INC., Commissioner of Economic Security, Respondents.**

No. C1-94-2432.

Court of Appeals of Minnesota.

June 6, 1995.

Neil R. Tangen, Tangen Law Offices, Starbuck, for relator Loewen.

Thomas G. Jovanovich, Rajkowski Hansmeier, Ltd., St. Cloud, for respondent Lakeland Mental Health Center, Inc.

Kent E. Todd, St. Paul, for respondent Com'r of Economic Sec.

Considered and decided by SCHUMACHER, P.J., and PARKER and FOLEY,* JJ.

## OPINION

DANIEL F. FOLEY, Judge.

Relator appeals by certiorari from the Commissioner of Economic Security's decision denying her claim for reemployment insurance benefits. Relator worked for respondent employer as a psychotherapist. The Commissioner, by her representative, concluded that respondent fired relator for misconduct for her refusal to undergo a psychological evaluation requested by respondent. We reverse and remand.

### FACTS

Relator Brenda Loewen was employed by Lakeland Mental Health Center as a psychologist with duties to staff a satellite office and conduct psychotherapeutic services in an unsupervised setting. Loewen began her employment on November 2, 1993. During the spring of 1994, Loewen mentioned to her supervisor, Clayton Skretvedt, that she was having a conflict with a medical doctor from another clinic concerning the care of her children, and that a temporary restraining order prohibited her from having contact with the doctor and the clinic where he worked. She also informed Skretvedt that she had had a relationship with the doctor that had gone beyond that of a physician/client relationship. At the hearing, Loewen explained that the doctor had initiated inappropriate sexual contact with her during physical examinations.

On May 27, 1994, Loewen was arrested for "stalking" the medical doctor. Lakeland placed Loewen on leave with pay on June 17, 1994. In a letter dated June 20, 1994, one of Lakeland's staff psychologists stated that someone had reported to him that Loewen's "stalking" behavior had been repeated on numerous occasions. He stated that he was concerned about Loewen's emotional stability to function as a psychologist. Without any further inquiry and without a discussion with Loewen, he recommended that Loewen undergo "a thorough psychological evaluation to ascertain the appropriateness of her being able to function in her current position."

Upon Skretvedt's suggestion, Loewen voluntarily met on one occasion with Barbara Klein, a licensed social worker with Lakeland's employee assistance program. They talked about the stalking incident and Loewen's problems with the medical doctor. Klein then called and informed Lakeland that she believed Loewen should not be counseling clients. Skretvedt testified that Klein told him Loewen had a "significant cognitive delusional disorder."

Lakeland scheduled an evaluation for Loewen with a psychologist who had experi-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

ence dealing with professionals who were having personal problems that could affect their work performance. Lakeland informed Loewen that the purpose of the evaluation was solely to ascertain her ability to return to work and that the evaluation would remain confidential. Loewen refused to attend the evaluation. Lakeland advised Loewen that the consequence of her continued refusal to submit to the evaluation would be dismissal. Lakeland discharged Loewen from employment when she persisted in her refusal to undergo the psychological evaluation with the psychologist Lakeland had chosen.

Loewen applied for reemployment insurance benefits. After a hearing, a referee with the Department of Economic Security determined that Loewen's refusal to submit to the requested psychological examination did not constitute misconduct. The referee found that Loewen had been a good employee and that the record contained no evidence that she had any problems at work, other than her refusal to undergo the requested psychological evaluation. The referee found that Lakeland had failed to show that Loewen owed it an obligation to undergo the requested evaluation. The referee also determined that Loewen's "agitated mental state" had interfered with her ability to understand Lakeland's reasons and request for a psychological examination.

Lakeland appealed to a Commissioner's representative, who issued new findings of fact and reversed the referee's decision. The Commissioner's representative found that Lakeland had made a reasonable request for a psychological evaluation based upon issues raised by the staff psychologist and social worker, and in view of standards of competency required by the Minnesota Rules of Conduct for psychologists, Minn.R. 7200.4810 (1993). The Commissioner's representative concluded that Loewen's refusal to submit to the requested psychological evaluation was misconduct disqualifying her from receiving reemployment insurance benefits.

## ISSUE

Does the record support the Commissioner's determination that relator was discharged for misconduct disqualifying her from receipt of reemployment insurance benefits?

## ANALYSIS

■ The issue here is not whether Lakeland was reasonable in deciding to terminate Loewen, but whether, now that Loewen is unemployed, reemployment insurance benefits may be denied her as well. *See Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989). "The declared policy of our state provides that benefits extend only to persons unemployed through no fault of their own." *Id.* Accordingly, Minnesota law provides that an individual discharged from employment for "misconduct" is disqualified from receiving reemployment insurance benefits. Minn.Stat. § 268.09, subd. 1(b) (Supp.1993).

■ The employer has the burden of proving by the greater weight of the evidence that the employee was discharged for disqualifying misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459–60, 209 N.W.2d 397, 400 (1973).

Because the statute does not define "misconduct," Minnesota courts have applied the following definition:

> "[M]isconduct" * * * is limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941)).

> [M]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated incidences,

or good-faith errors in judgment or discretion are not to be deemed "misconduct." *Id.* at 375, 204 N.W.2d at 646.

On appeal, this court reviews the Commissioner's representative's findings in the light most favorable to the decision; we will not overturn those findings "if there is evidence reasonably tending to sustain them." *White v. Metropolitan Med. Ctr.,* 332 N.W.2d 25, 26 (Minn.1983). Loewen contends that this court should review and rely on the referee's findings of fact and determination of witness credibility. We disagree. The appellate court must review the findings of the Commissioner's representative, not those of the referee, even when those findings involve witness credibility. *Tuff v. Knitcraft Corp.,* 526 N.W.2d 50, 51 (Minn. 1995).

While this court must defer to the Commissioner's representative's findings of fact if they are reasonably supported by evidence in the record, we may exercise independent judgment with respect to questions of law. *Smith v. Employers' Overload Co.,* 314 N.W.2d 220, 221 (Minn.1981). Whether an employee has committed misconduct is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros., Inc.,* 346 N.W.2d 159, 161 (Minn.1984).

The Commissioner's representative concluded that Loewen's refusal to undergo the psychological evaluation that Lakeland requested constituted misconduct. Where a request of an employer is reasonable, refusal to comply with that request may constitute misconduct. *See Ress,* 448 N.W.2d at 525 (employee who refused to follow doctor's recommendation for patient, but instead gave inappropriate, unauthorized treatment, had committed misconduct).

The Commissioner's representative determined that Lakeland's concerns about Loewen's ability to counsel clients in an unsupervised setting and its requirement that she submit to a psychological examination were "prudent and reasonable" in view of Minn.R. 7200.4810 (1993). That rule provides that: "A psychologist must not provide psychological services to a client or potential client when the psychologist's objectivity or effec-

tiveness is impaired." *Id.,* supt. 1. A psychologist has "impaired objectivity [or] effectiveness" whenever:

A. the psychologist has a dual relationship with a client;

B. the psychologist misuses the relationship with a client due to a relationship with another individual or entity;

C. the psychologist is biased against a client because of the client being a member of a class of individuals that is legally protected from discrimination;

D. the psychologist is dysfunctional as a result of a severe physical or mental health problem, including chemical abuse or dependency; or

E. the psychologist exploits the professional relationship with a client for the psychologist's emotional, financial, sexual, or personal advantage or benefit.

*Id.,* subpt. 2.

Evidence in the record support's the Commissioner's representative's findings that Loewen had been the subject of a temporary order restraining her from contacting her obstetrician/gynecologist, that she was arrested for "stalking" the doctor, and that two mental health care professionals recommended that Loewen undergo a psychological evaluation because of a concern regarding her emotional stability and ability to function objectively and effectively as a psychologist. The record also contains evidence to support the finding that Loewen's relationship with the doctor had exceeded the physician/patient boundaries. Further, the Commissioner's representative noted that the social worker who had met with Loewen "believed that [Loewen] might have a 'cognitive delusional disorder.'" These findings support the determination that Lakeland's requirement that Loewen undergo a psychological evaluation before she return to work was reasonable considering the requirements of professional conduct for psychologists set forth in Minn.R. 7200.4810.

This brings us to the pivotal question of whether Loewen's refusal to submit to the test scheduled by Lakeland was "miscon-

duct."[1] The Commissioner's representative concluded that it was misconduct, but we do not believe that the findings support this conclusion.

■ Loewen argues that her mental state impaired her reasoning when she decided to refuse Lakeland's request. The Commissioner's representative found a valid concern existed that Loewen was suffering from a delusional thinking disorder, yet the representative did not address several issues: whether Loewen's mental state affected her capacity to evaluate her ability to function as a psychologist; whether it affected her belief that her capacity for "objectivity or effectiveness" did not violate the Minnesota Rules of Conduct for Psychologists; and how, or if, Loewen's mental state affected her ability to understand or make a rational decision regarding Lakeland's request. Where the evidence and the Commissioner's representative's findings indicate that Loewen's mental state may have impaired her ability to evaluate and respond to Lakeland's demand that she undergo a psychological evaluation, it was premature for the Commissioner's representative to disqualify Loewen from receipt of reemployment insurance benefits without first determining her mental status.

## DECISION

The record does not support the Commissioner's determination that Loewen was discharged for misconduct. We reverse and remand for examination, evaluation, and findings on Loewen's mental state and on how her mental state affected her ability to evaluate and respond to Lakeland's request. On remand, Loewen has a duty to submit to a psychological evaluation.

**Reversed and remanded.**

---

1. Although Lakeland may have reasonably requested that Loewen undergo a psychological evaluation and while it may have made a reasonable business decision to terminate her employment, the key issue is not whether Lakeland's actions were reasonable, but whether Loewen's actions constituted "misconduct." *See Ress,* 448 N.W.2d at 523.