766 So.2d 104 (2000)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION, Appellant,
v.
UNIVERSAL WEARPARTS, INC., Appellee.
No. 1999-CC-01127-COA.
Court of Appeals of Mississippi.
August 29, 2000.
*105 John Wesley Garrett Jr., Clinton, Attorney for Appellant.
Jeffrey A. Weill, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Mississippi Employment Security Commission (MESC) appeals the decision of the Circuit Court of Walthall County which reversed the decision of the Board of Review of the MESC finding that Leo Carson had not been terminated for misconduct within the meaning of Miss.Code Ann. § 71-5-511 (Rev.1995). MESC assigns the following issues for our review
1. WHETHER THE CIRCUIT COURT'S ORDER FINDING THAT THE BOARD OF REVIEW'S DECISION S[SIC] NOT SUPPORT BY SUBSTANTIAL EVIDENCE SHOULD BE REVERSED?
2. WHETHER THE CIRCUIT COURT CORRECTLY DECIDED THAT THERE WAS SUBSTANTIAL EVIDENCE TO PROVE THAT LEO CARSON COMMITTED DISQUALIFYING MISCONDUCT PURSUANT TO M.C.A. § 71-5-511 (REV.1995)?
Finding error, we reverse and render.

FACTS
¶ 2. Carson was employed by Universal Wearparts, Inc. (Universal) from July 4, 1998 to December 15, 1998, when he was terminated for failure to meet standards in the performance of assigned work. Prior to terminating Carson, Universal had moved him to three different jobs, and he had performed unsatisfactorily in each of them.
¶ 3. The claims examiner, referee and board of review each found that Universal had not proven that the termination was due to misconduct on the part of Carson. The referee made the following findings of fact:
Claimant was employed as a laborer with Universal Wearparts, Inc, Taylortown, Mississippi, for five months ending December 15, 1998. He was discharged for failing to perform work up to the standards required by the employer. Claimant had a poor work performance and worked too slow. He had been verbally warned concerning his slow work and performance. Claimant was placed in three different positions with the employer and he did not perform the work satisfactorily in any position. The employer is in the business of manufacturing carbide replacement parts for *106 wood chippers. Most of the claimant's work that he produce had to be done again by someone else. While he was doing surface grinding, claimant was too slow. The last thing the employer had claimant doing was counting and separating inserts. This also had to be redone. Claimant had not shown that he was capable of performing the work and he was discharged. Claimant did not intentionally do anything against the best interest of the employer.
¶ 4. The Board of Review adopted the findings of fact of the referee and affirmed his decision. Universal appealed to the Circuit Court of Walthall County, and as stated, that court reversed the Board of Review.

DISCUSSION OF THE ISSUES

Standard of Review
¶ 5. The circuit court sits as an appellate court in reviewing the decisions of the Board of Review of the MESC. Both the circuit court and this Court are required to accept the findings of fact of the Board of Review, absent fraud, if supported by substantial evidence, and if the correct principles of law have been applied, we are obligated to affirm the decision of the board. Miss.Code Ann. § 71-5-531 (Supp.1999), see Richardson v. Mississippi Employ. Sec. Comm'n, 593 So.2d 31 (Miss. 1992).

Was there substantial evidence to support the findings of the Board of Review?
¶ 6. At the hearing before the referee, Universal's representative was asked if he felt that Carson was doing anything purposely or against the best interest of the employer, the referee answered, "yes." When asked to explain, this was his answer:
G. Just basically slow work. And in the case of, I guess how you best describe it is nonproductive work. In the case of fusing, I can just describe briefly. It's just a blow torch where we're putting a hardened surface on a piece of steel. Normally, when you do this there is some, he may be doing an area that's a square foot. A very small part of that area may not take. You'll have to refuse that. We call that past plating. The people that do it now, maybe ten percent of the area, the parts that we do need to be patch plated. That would be considered normal. When we always doing it, that was eighty percent. Basically, we were having to do eighty percent of the jobs he was doing twice. So, I moved him from that position to surface grinding. He had requested to be moved. So, I did do that but I had to find him a replacement for him first, which I did do.
Q. So, he really just didn't work out in the fusing part?
A. He did it well about the first week or week and a half that he was there. He looked pretty good. And then the quality of the work just deteriorated. I think it was about two months.
Q. He worked there about two months?
A. Yes. Fusing about two months.
Q. What happened in the surface grinding?
A. Surface grinding at the time, he was just very slow. He was taking roughly twice as long to grind things that previous people had been doing on the same machine.
Q. What about the last position?
A. The last one of counting inserts, that was like a one time temporary job. It was tied in with the grinding job. We just asked him to count and separate. We had a big barrel of inserts and they were different sizes and we asked him to sit down and separate them all and *107 measure them and get them sorted out. He spend about a half day on that job, and that job had to be done again. They were still not sorted out.
Q. Okay. So did anything particularly happen to make you decide it was time to let him go?
A. That was it right there. At that point we had tried him on three different things and he had not done a good job on any of them, so I discharged him at that point.
Q. Anything else?
A. That's about it.
¶ 7. Circuit Judge Mike Smith stated the following in his order overruling the decision of the Board of Review:
The allegations of the employer demonstrate that Mr. Carson's actions fall within the meaning of misconduct pursuant to Wheeler and further that his behavior, such as performing card tricks, evince a willful disregard of the employer's interest as well as disregard of the standards of behavior which Mr. Weill had a right to expect from his employees. The employer was justified in terminating Mr. Carson for misconduct as defined in case law of this State.
¶ 8. In Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982) (quoting Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941)), referred to in Judge Smith's order, the Mississippi Supreme Court defined misconduct this way:
[T]he meaning of the term `misconduct' as used in the unemployment compensation statute, was conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of the standards of behavior which the employer has the right to expect from his employees. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came with the term.
The Arriola court further held that "[m]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgement or discretion were not considered `misconduct' within the meaning of the statute." Id.
¶ 9. In his order, Judge Smith referred to Carson having performed some kind of "card trick," presumably while on the job. There is absolutely no evidence in the record before the Commission of any "card tricks" being performed by Carson while on the job. We can only assume Judge Smith was referring to a statement contained in a letter sent to the circuit court on April 21, 1999, six days after the director of the unemployment insurance division of the MESC had certified the record of the proceedings before the Commission. This letter was improperly considered by Judge Smith.
¶ 10. As stated, the circuit court sits as an appellate court and can only consider the record made before the Board of Review. Mississippi Code Annotated § 71-5-531 (Supp.1999) states that "[i]n any judicial proceedings brought under [stated code section], the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."
¶ 11. We hold that there was substantial evidence to support the findings and decision of the Board of Review and that the board did not misapply the applicable law. Accordingly, the judgment of the Circuit Court of Walthall County is reversed and the decision of the Board of Review of the MESC is reinstated.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY *108 REVERSING THE DECISION OF THE BOARD OF REVIEW OF THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION IS REVERSED AND RENDERED AND THE DECISION OF THE BOARD OF REVIEW OF THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION IS REINSTATED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.
LEE, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J.
LEE, J., Concurring:
¶ 13. It is with great reluctance that I join the opinion of the majority. It is apparent from the testimony at the hearing before the referee that Carson was capable of fulfilling his employment obligations. In fact, for the first week and a half he was employed with Universal his performance was adequate, subsequently his quality of work deteriorated. In the referee's findings of fact he stated that the "claimant did not intentionally do anything against the best interest of the employer." I do not find this to be consistent with the testimony given at the hearing; however, as an appeals court we must defer to the findings of fact made by the Board of Review.
BRIDGES, J., JOINS THIS SEPARATE WRITTEN OPINION.