IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 3, 2002 Session

## CAROLYN E. PHELPS v. MICHAEL MCGILL, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, ET AL.

**A Direct Appeal from the Chancery Court for Madison County**
**No. 57754     The Honorable Joe C. Morris, Chancellor**

---

**No. W2002-00018-COA-R3-CV - Filed July 9, 2002**

---

Plaintiff was discharged from her employment for making a false statement concerning her health in her application for employment to defendant-employer. The false statement was discovered some years after her employment commenced when she sustained an injury at work which had no relation to the false answers in the application. Plaintiff was denied unemployment benefits because of work-related misconduct which was affirmed by the Board of Review. Plaintiff filed a Petition for Judicial Review in the chancery court. The chancery court affirmed the Board of Review, and plaintiff appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Michael G. Tollison, Humboldt, For Appellant, Carolyn E. Phelps

Paul G. Summers, Attorney General and Reporter, Warren A. Jasper, Assistant Attorney General, for Appellee, Michael McGill

P. Allen Phillips, Jackson, For Appellee, Maytag Jackson

**OPINION**

Plaintiff, Carolyn Phelps (hereinafter Ms. Phelps), filed a petition against Michael McGill, Commissioner of the Tennessee Department of Labor and Workforce Development and Maytag Jackson for judicial review of the Board of Review's decision denying her unemployment compensation.

According to the findings of fact adopted by the Board of Review, Ms. Phelps worked on the production line for Maytag from March 9, 1998, until she was terminated on May 9, 2000. Ms. Phelps' job required her to tilt each dishwasher on the assembly line. Shortly before her termination from Maytag, Ms. Phelps reported to Maytag that a dishwasher had fallen on her twice during the same day, and that she had injured her back. After receiving some medical treatment and being off work for a period of time, she returned to work with "light duty" restrictions. She also hired an attorney to help her file a worker's compensation claim against Maytag for this injury.

During litigation on the worker's compensation claim, Maytag reviewed Ms. Phelps' "Personal Medical History" form, which she had completed on February 25, 1998 as a condition of employment, and discovered that Ms. Phelps had not disclosed a previous back injury she sustained in 1993. This injury required Ms. Phelps to undergo several days of tests, one of which resulted in Ms. Phelps having headaches. As a result of the 1993 back injury, Ms. Phelps was informed that she had a slightly bulging disk in her back which, according to her physician, constituted a 5% disability rating. Maytag subsequently terminated Ms. Phelps for failure to report the 1993 back injury. The medical history form that Ms. Phelps signed contained a provision which stated that "any omission, misstatement or falsification of information is grounds for immediate discharge based on dishonesty."

After she was terminated, Ms. Phelps filed an Initial Claim for Unemployment Compensation with the State of Tennessee on May 9, 2000. The Tennessee Department of Labor and Workforce Development (hereinafter "TDOL" or "Agency") mailed Maytag a "Notice of Claim Filed and Request for Separation Information" on May 11, 2000. Maytag responded, via fax, on May 11, 2000 and, in its response, stated that Ms. Phelps was discharged for falsifying a medical record form that was part of her application paperwork.

By letter dated May 22, 2000, the Agency informed Ms. Phelps that her claim for unemployment benefits was denied. The letter also stated that the reason for its denial of the claim was that the Agency considered Ms. Phelps' actions in falsifying her medical record to be work-related misconduct under T.C.A. § 50-7-303. Ms. Phelps appealed this decision and appeared before the TDOL Appeals Tribunal (hereinafter "Tribunal") on June 22, 2000 for an evidentiary hearing. The Tribunal mailed its decision on June 22, 2000, affirming the Agency's decision. Ms. Phelps then appealed to the TDOL Board of Review (hereinafter "Board") and the Board, by letter dated August 1, 2000, affirmed the decision of the Tribunal.

The Board found that, as a matter of law, employees owe a duty to their employers to truthfully and accurately complete company records. The Board also found that the evidence was sufficient to show that the injury she received in 1993 was significant, and that Ms. Phelps either knew or should have known that she had a duty to provide her employer with this information. Lastly, the Board found that her failure to report the injury violated a duty owed to her employer and was "work connected misconduct" under T.C.A. § 50-7-303(a)(2), prohibiting her from receiving unemployment compensation.

On September 1, 2000, Ms. Phelps filed a "Petition for Judicial Review," pursuant to T.C.A. § 50-7-101 et seq. and T.C.A. § 4-5-101 et seq., in the Chancery Court of Madison County against both Maytag and Michael Magill, Commissioner of the TDOL. By order entered December 6, 2001, the trial court affirmed the Board's decision denying Ms. Phelps's claim for unemployment compensation. Ms. Phelps appeals and presents the following three (3) issues as stated in her brief:

I.      Is a claimant disqualified for "misconduct connected with such claimant's work" for a misstatement contained in an employment application since the applicant is not an employee and is not performing any work for the employer while completing an application for employment.

II.     Whether the definition of the disqualifying event of "misconduct connected with such claimant's work" under T.C.A. § 50-7-303(a)(2) requires a causal connection between any misconduct and the employee's performance of work.

III.    Whether petitioner's misstatement in her employment application is *de minimis* as the respondent employer suffered no injury or prejudice from the misstatement of petitioner.

The standard of review for administrative decisions involving claims for unemployment compensation is set out in T.C.A. § 50-7-304 (i)(2) (2001), which we quote:

> (2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (A) In violation of constitutional or statutory provisions;
> (B) In excess of the statutory authority of the agency;
> (C) Made upon unlawful procedure;
> (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (E) Unsupported by evidence which is both substantial and material in the light of the entire record.

T.C.A. § 50-7-304 (2001) further specifies that "[i]n determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact." T.C.A. § 50-7-304 (i)(3) (2001).

The Court of Appeals applies the same standard as the trial court in reviewing trial court decisions in unemployment compensation cases. *See Ford v. Traughber*, 813 S.W.2d 141 (Tenn. Ct. App. 1991). Substantial and material evidence has been defined as any "relevant evidence which a reasonable mind might accept to support a rational conclusion and which furnishes a reasonably sound basis for the action being reviewed." *Frogge v. Davenport*, 906 S.W.2d 920, 922 (Tenn. Ct. App. 1995)(citing *Southern R. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). In *Sabastian v. Bible*, 649 S.W.2d 593 (Tenn. Ct. App. 1983), this Court said:

> In order to sustain the Board of Review's application of the provisions of the statute, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in a judicial proceeding. The reviewing court's function is severely limited. All that is needed to support the commission's interpretation is that it has warrant in the record and a reasonable basis in law.

*Id.* at 594-95 (citing *Cawthron v. Scott*, 400 S.W.2d 240, 242 (Tenn. 1966)).

We will now address the issues.

Ms. Phelps argues in her first and second issues that she cannot be disqualified from receiving unemployment benefits for misconduct connected with her work because she was not working for Maytag at the time she completed her "Personal Medical History" form and because the definition of "misconduct connected with [her] work" requires a causal connection between any misconduct and her performance of work. We disagree. T.C.A. § 50-7-303(a)(2) provides in pertinent part:

> (a) DISQUALIFYING EVENTS. A claimant shall be disqualified for benefits:
>
> \*   \*   \*
>
> (2) If the administrator finds that a claimant has been discharged from such claimant's most recent work *for misconduct connected with such claimant's work*, such disqualification shall be for the duration of the ensuing period of unemployment and until such claimant has secured subsequent employment covered by an unemployment compensation law of this state. . . .

*Id*. (emphasis added). Although this statute does not define "misconduct connected with such claimant's work," our Supreme Court, in dealing with the meaning of this phrase, said:

[A]n essential element of 'misconduct connected with the work' is a breach of duty owed to the employer, as distinguished from society in general.

***Weaver v. Wallace***, 565 S.W.2d 867, 870 (Tenn. 1978)(citing ***Detterer v. Unemployment Compensation Board of Review***, 168 Pa. Super. 291, 77 A.2d 886 (1951); ***Boynton Cab Co. v. Neubeck***, 237 Wis. 249, 296 N.W. 636 (Wis. 1941)).  The ***Weaver*** Court, in reaching its decision, quoted with approval 81 C.J.S. *Social Security* § 222 (1997) which provides:

> Depending on the specific provisions of the statute, in order to disqualify an employee for unemployment benefits his misconduct must be *in the course of his most recent work, connected with his work, or connected with the employment.*  Under such provisions, it is not necessary that the act of misconduct occur during the working hours or at the place of employment, so long as it is connected with the employment, and the fact that misconduct relates to the private life or off-duty activities of the employee does not necessarily preclude its having a connection with the employment requisite to bar the right to compensation.  Ordinarily, however, an employee's conduct off the working premises or outside the course or scope of his employment is not considered as misconduct in connection with employment.

*Id*. (emphasis added).

Furthermore, this Court, in ***Burrow v. Neal***, C.A. No. 100, 1986 Tenn. App. LEXIS 3529 at *3-5 (Tenn. Ct. App. Dec. 12, 1986), in dealing with this issue, said:

> The proof shows that claimant stated on his employment application that he had no past or present back injuries.  However, claimant had a back problem dating back seven years to his military service regarding which he had received conflicting medical opinions while he was in the service.  There is testimony in the record that claimant told an agent of NAP that he had not divulged this information on his application because he knew he would not have gotten the job had he done so.  The employment application signed by claimant clearly states that misrepresentations of facts will subject him to immediate discharge.
>
> We find that the Board of Review's determination that the claimant was properly discharged for misconduct connected with his work and therefore disqualified from receiving unemployment compensation benefits was supported by the evidence.

In the present case, it is undisputed that Ms. Phelps had a previous back injury, which was work-related, and, in two places on the form, denied such injury. It is further undisputed that the form contained a provision stating that "any omission, misstatement or falsification of information is grounds for immediate discharge based on dishonesty." Although Ms. Phelps was not actually employed with Maytag at the time she completed her "Personal Medical History" form, we find that she nevertheless owed a duty to Maytag to fully disclose her medical history on the form. This document was to be truthfully completed as a condition of employment with Maytag, and was, therefore, a connection to her employment with Maytag.

We agree with the *Weaver* Court's definition of "misconduct connected with such claimant's work," as well as this Court's previous treatment of these issues and, therefore, find that Ms. Phelps committed work-related misconduct by failing to disclose her previous work-related back injury on the "Personal Medical History" form.

Lastly, Ms. Phelps argues that her misstatement in her employment application should be considered *de minimis* because it did not materially interfere with Ms. Phelps' employment. Ms. Phelps relies on this Court's decision in ***Armstrong v. Neel***, 725 S.W.2d 953, 957 (Tenn. Ct. App. 1986), where we recognized the *de minimis* rationale and held that an unemployment claimant was not disqualified after threatening to "whip" a co-worker when it was shown that the co-worker brought on the altercation which did not materially interfere with the work. Ms. Phelps' reliance on ***Armstrong*** is misplaced. In ***Armstrong***, the comments were directed toward a co-worker, rather than toward a supervisor of the company in a work environment. However, in the present case, Ms. Phelps' action, by failing to disclose her previous work-related back injury on the form, was directed toward her employer, Maytag, and results in "deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee." ***Armstrong v. Neel***, 725 S.W.2d 953, 956 (Tenn. Ct. App. 1986)(quoting ***Boynton Cab Co. v. Neubeck***, 237 Wis. 249, 296 N.W. 636, 640 (1941)). We do not consider Ms. Phelps' conduct to be so insignificant as to be *de minimis*.

Accordingly, the order of the trial court is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Carolyn E. Phelps, and her surety.

 

 

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.