Department of Employment Security
No. 2003-016

APPEAL OF LAKEVIEW NEUROREHABILITATION CENTER, INC.
(New Hampshire Department of Employment Security)

Argued: September 10, 2003
Opinion Issued: October 29, 2003

*Getman, Stacey, Tamposi, Schulthess & Steere, P.A.*, of Bedford (*Edwinna C. Vanderzanden* and *Jill A. DeMello* on the brief, and *Ms. Vanderzanden* orally), for the petitioner.

*Upton & Hatfield, LLP*, of Concord (*Heather M. Burns* and *Lauren S. Irwin* on the brief, and *Ms. Burns* orally), for the claimant.

*Peter W. Heed*, attorney general (*Mary E. Schwarzer*, assistant attorney general, on the brief and orally), for the New Hampshire Department of Employment Security.

BRODERICK, J. The petitioner, Lakeview NeuroRehabilitation Center, Inc. (Lakeview), appeals a final decision of the appeal tribunal (tribunal), as affirmed by the appellate board, of the New Hampshire Department of Employment Security awarding unemployment benefits to the claimant, Joseph K. McCusker. We affirm.

The record supports the following facts. Lakeview is a residential treatment and rehabilitation facility for brain injured, neurologically impaired and emotionally disturbed children, adolescents and adults. McCusker began working there in 1997 as a temporary grounds crew worker who shortly thereafter became a permanent member of the staff. He has suffered from Type I diabetes since 1978 and is medically required

to monitor his blood sugar several times each day, eat at regular intervals, and adjust his medication as needed. If his blood sugar drops substantially he is subject to a hypoglycemic reaction, which triggers sweating, blurred vision, confusion and/or loss of consciousness. Lakeview was aware of McCusker's disease when it hired him.

McCusker was discharged from his job on April 24, 2002, because of alleged inappropriate and unsafe behavior on four separate occasions between June 2000 and the date of his discharge. The first incident occurred in June 2000, when McCusker suffered a hypoglycemic reaction while driving a maintenance truck on the Lakeview grounds. As a result, he lost control of the vehicle and struck the maintenance barn. McCusker was then transferred to a new position as a residential trainer. In that capacity he was required to provide direct personal care and assistance to patients.

In June 2001, a Lakeview staff member allowed a patient to use the telephone in an office where McCusker had been instructed by Lakeview to keep his insulin kit. Left unsupervised, the patient discovered the kit and took a syringe. McCusker was reprimanded. In December, McCusker lost consciousness at work during a hypoglycemic reaction. A Lakeview nurse revived him by administering glucose and he was able to finish his shift.

Subsequently, Lakeview placed McCusker on thirty-days probation to ensure that he was able to monitor his blood sugar effectively. He was directed to check his blood sugar four times a day and eat meals and snacks in accordance with his dietary requirements. McCusker completed his probation without incident.

On March 11, 2002, McCusker was given a very high rating in his job performance appraisal. In particular, his review noted that "[a]long with the unexpected schedule changes, Joe holds safety above all else for the staff and [patients] he is responsible for." The "Areas For Improvement & Plan" section of the review stated, "None noted at this time."

The following month, McCusker experienced another hypoglycemic reaction despite checking his blood sugar at the appropriate times. He became loud, kidded adolescent patients in a forceful way, grabbed a patient by the shoulders and shook him lightly and tapped another patient on the head with a newspaper. He was argumentative with staff members and waved an empty syringe in the air.

As a result of these episodes, Lakeview terminated McCusker's employment. Thereafter, he filed for unemployment benefits with the New Hampshire Department of Employment Security, alleging that he had been discharged due to his diabetic condition. Lakeview contended that he

was fired for "inappropriate/unsafe behavior in the presence of [patients]." McCusker's request for benefits was denied upon a finding that he was discharged due to "misconduct connected with his work," *see* RSA 282-A:32, I(b) (1999). McCusker appealed the denial to the tribunal, which, following an evidentiary hearing, reversed the decision denying benefits. The tribunal found that while McCusker was discharged for his inability to do his job, his inability did not arise from misconduct connected with his work. Specifically, the tribunal found that McCusker "worked to the best of his ability," "did his best to control his diabetic condition" and had not engaged in misconduct. After its request for reopening was denied, Lakeview appealed to the appellate board, which affirmed the tribunal's decision. This appeal followed. *See* RSA 282-A:67, II (1999).

Lakeview asks this court to overturn the award of unemployment benefits to the claimant on the grounds that the tribunal: (1) misapplied or ignored the proper legal standard for assessing employee misconduct under RSA 282-A:32, I(b); (2) failed to base its decision upon competent medical evidence; and (3) failed to hold employees in the health care profession to a more demanding standard in assessing misconduct. Lastly, Lakeview contends that the tribunal's finding, that the claimant's hypoglycemic reactions were the uncontrollable result of his medical condition, was clearly erroneous.

In reviewing a decision of the tribunal we are confined to the record and will not substitute our judgment for its judgment as to the weight of the evidence on questions of fact. RSA 282-A:67, IV, V (1999); *see Appeal of N.H. Sweepstakes Commission*, 130 N.H. 659, 662 (1988). We will uphold the decision of the tribunal unless its findings or conclusions are unauthorized, affected by an error of law, or clearly erroneous in view of all the evidence presented. *See* RSA 282-A:67, V; *Appeal of John Hancock Distributors*, 146 N.H. 124, 127 (2001).

New Hampshire's unemployment compensation system is predicated upon benefits being paid to those who become unemployed through no fault of their own. *See Appeal of Miller*, 122 N.H. 993, 994 (1982). No benefits are to be paid, however, to an employee who is terminated as a result of "misconduct connected with his work." RSA 282-A:32, I(b).

 Both parties agree upon the applicable law for assessing employee misconduct under RSA 282-A:32, I(b). It is well established that New Hampshire uses a two-pronged definition of employee "misconduct." *Appeal of N.H. Sweepstakes Commission*, 130 N.H. at 664. Under the first prong:

> Isolated or inadvertent instances of unsatisfactory conduct are not sufficient for a finding of "misconduct," but recurring careless or negligent acts are enough to constitute "misconduct." As well, the negligence need not be of such a degree or recurrence as to manifest wrongful intent or evil design or to show intentional and substantial disregard.

*Id.* (citation and quotations omitted). Under the second prong, if there are no recurring acts of carelessness or negligence, "a single instance of misconduct may be sufficient for a finding of misconduct if it is a deliberate violation of a company rule reasonably designed to protect the legitimate business interests of the employer." *Id.* (quotation, emphasis and brackets omitted); *see Appeal of Beebe Rubber Co.*, 124 N.H. 533, 536 (1984).

Lakeview first argues that McCusker's repeated failure to properly monitor his blood sugar, despite verbal and written warnings, constituted "recurring careless or negligent acts" sufficient to establish misconduct. In the alternative, it contends that McCusker's failure to meticulously follow his treatment regimen, after having been warned by Lakeview that such strict adherence was essential, constituted a "deliberate violation" of its rules and procedures.

■ Lakeview argues that the tribunal misapplied or ignored the recognized standards for assessing employee misconduct when it awarded McCusker benefits on the basis that he "worked to the best of his ability" and did "his best" to control his diabetic condition and, thus, did not engage in employee misconduct. Lakeview asserts that these findings imply that the absence of misconduct was assessed using a willfulness standard rather than the "recurring careless or negligent acts" test. We disagree. The tribunal's factual findings on each episode at issue indicate that it found no misconduct, either careless, negligent or willful, on McCusker's part. The tribunal essentially concluded that Lakeview had not established that the claimant was able to control his diabetic condition and thus there was no misconduct at all. The tribunal's acknowledgement that McCusker had done "his best" to properly monitor and accommodate his diabetes while at work can only be fairly interpreted to mean that he was free from fault and not complicit in misconduct, however assessed.

■ Lakeview argues in the alternative that the claimant's failure to follow his treatment regimen constituted a deliberate or willful violation of its rules and procedures. We disagree. We need not decide whether the claimant's conduct as characterized by Lakeview would, as a matter of law, satisfy the deliberate violation prong of employee misconduct under RSA

282-A:32, I(b), *see Appeal of Beebe Rubber Co.*, 124 N.H. at 536; *Appeal of United Parcel Service*, 125 N.H. 753, 756-57 (1984), because, as a matter of fact, the tribunal found that the claimant could not be faulted for his inability to perform his job functions. Accordingly, it cannot follow that his behavior resulting from his diabetic condition constituted a deliberate violation of Lakeview's rules and procedures. We cannot say that the tribunal's conclusion that the claimant treated his diabetic condition appropriately was clearly erroneous.

Lakeview next contends that the tribunal erred by failing to base its decision upon competent medical evidence and, instead, improperly grounded its decision upon its own lay assessment of the claimant's efforts to control his diabetic condition. Lakeview argues that the tribunal failed to require the claimant to satisfy his statutory burden of providing competent medical evidence that he was unable to control his diabetic condition. Although Lakeview's request to reopen the tribunal's decision was denied, in part, because it failed to argue before the tribunal that the claimant needed to submit expert medical testimony, we assume, without deciding, that the issue was preserved for appellate review.

The tribunal must apply a preponderance of the evidence standard when assessing the evidence before it. *Appeal of Kelly*, 129 N.H. 462, 466-67 (1987). The tribunal's findings of fact will not be disturbed if they are supported by competent evidence in the record, upon which the tribunal's decision reasonably could have been made. *Appeal of Kehoe*, 141 N.H. 412, 415 (1996).

In this case it was undisputed that the claimant suffered from diabetes and had experienced multiple hypoglycemic reactions. The claimant testified, before the tribunal, that his hypoglycemic reactions could occur despite conscientious monitoring. In addition, the claimant's physician submitted a "Physician's Statement" to the tribunal stating that because of the claimant's diabetic condition he could have hypoglycemic reactions without warning. In contrast, there was no credible testimony or evidence that the claimant did not attempt to properly monitor his condition or failed to follow the directions of his physician or employer as to when and how often he should monitor his condition. No medical expertise was required to interpret the evidence in this case. *See Appeal of Demeritt*, 142 N.H. 807, 810-11 (1998) (finding that no medical expertise was required to interpret the claimant's medical history as recorded by her treating physicians). Therefore, the tribunal's finding, that the claimant was unable to control his diabetic condition, was reasonably based upon competent evidence in the record.

Lakeview further argues that the tribunal erred because it failed to hold employees in the health care profession to a more demanding standard in assessing misconduct under RSA 282-A:32, I(b) than is the case for other occupations. Lakeview reasons that employees in the health care profession are responsible for the health and safety of others and should therefore have their conduct judged by a more demanding standard.

■ Lakeview cites numerous cases from other jurisdictions in support of its argument that employees in the health care profession should be held to more rigorous review in assessing misconduct. While there can be no doubt that health care workers and professionals must act for the benefit and safety of clients and patients under their charge, there is no need to impose a different legal standard for assessing misconduct for unemployment purposes. Obviously, the conduct of employees should be assessed within the context in which it occurs in calculating whether it evidences "recurring careless or negligent" behavior or a "deliberate violation" of an employer's rules and procedures. In each of the authorities cited by Lakeview, the conduct at issue on the part of the employee was the result of negligent or deliberate behavior. The acts at issue in this case were found not to be within the claimant's control and thus did not constitute misconduct. Whether a health care provider can terminate a worker who is unable to perform his job functions to its satisfaction is a different inquiry from whether the perceived inability is the result of misconduct for purposes of unemployment compensation.

■ Finally, Lakeview contends that the finding of the tribunal, that the claimant's hypoglycemic reactions were the uncontrollable result of his medical condition, was clearly erroneous. *See* RSA 282-A:67, V(d). Lakeview argues that the record compels a finding that the claimant was capable of controlling his diabetes and avoiding conduct that placed patients at risk of physical and emotional harm. In support, Lakeview argues that the claimant had complete control over monitoring and testing his blood sugar level. While the claimant could control monitoring and testing, the tribunal specifically found that the claimant, despite conscientious monitoring and testing, could not control his diabetes so as to prevent all hypoglycemic reactions. The claimant testified that the longer he lived with diabetes the less he was able to detect the onset of hypoglycemic reactions. Moreover, the "Physician's Statement" submitted to the tribunal by the claimant's physician stated that the claimant could have a hypoglycemic reaction without warning. Based upon the evidence,

the tribunal could reasonably have found that the claimant's hypoglycemic reactions were the result of his medical condition and not misconduct.

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.