Department of Employment Security
No. 2005-120

APPEAL OF ANDREW J. KAPLAN
(New Hampshire Department of Employment Security)

Argued: November 16, 2005
Opinion Issued: March 10, 2006

*Getman, Stacey, Schulthess & Steere, P.A.*, of Bedford (*Edwinna C. Vanderzanden* and *Jill A. DeMello* on the brief, and *Ms. Vanderzanden* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Wynn E. Arnold*, senior assistant attorney general, on the brief and orally) and *Charles H. Bradley*, of Concord, on the brief, for the New Hampshire Department of Employment Security.

DUGGAN, J. The petitioner, Andrew J. Kaplan, appeals a decision of the appeal tribunal (tribunal) as affirmed by the appellate board, of the New Hampshire Department of Employment Security (DES) denying him unemployment benefits. *See* RSA 282-A:32, I(e) (Supp. 2005). We affirm.

The record supports the following facts. In March 1984, Kaplan co-founded Kinderworks Corporation (Kinderworks). Kaplan handled some of its marketing and sales and invested $45,000 of his own funds in the corporation. He also served as a salaried president, chief executive officer and, at the end of the corporation's existence, was its sole director, treasurer and secretary. Kinderworks had more than 200 shareholders. Kaplan owned between forty and forty-nine percent of Kinderworks' stock.

By late 2003, Kinderworks had incurred substantial debt. Its lender withdrew financial support by calling in Kinderworks' loans. Kinderworks

failed to satisfy its obligations and the lender foreclosed. Kinderworks terminated operations on February 27, 2004.

Kaplan subsequently applied to DES for unemployment benefits. A certifying officer denied his request. On appeal to the tribunal, Kaplan argued that: (1) he was an employee of Kinderworks and thus eligible for unemployment benefits; and (2) he was entitled to a refund of unemployment premiums that DES had collected from Kinderworks. The tribunal ruled that Kaplan was not eligible for benefits because he was self-employed within the meaning of RSA 282-A:32, I(e) and New Hampshire Administrative Rules, Emp 503.03 (Rule 503.03). Kaplan appealed to the commissioner who denied his request to reopen the case. Kaplan then appealed to the appellate board, alleging in part that DES' actions were confiscatory and violated his equal protection rights. The appellate board sustained the tribunal's decision and denied Kaplan's motion to reconsider. This appeal followed. *See* RSA 282-A:67, II (1999).

On appeal, Kaplan argues that: (1) the tribunal's decision to deny him unemployment was clearly erroneous because he "did not control the corporation"; (2) RSA 282-A:32, I(e) and its accompanying regulations violate the Equal Protection Clause of both the Federal and State Constitutions; and (3) his federal and State constitutional rights entitle him to the return of all unemployment contributions made by Kinderworks on his behalf.

"In reviewing a decision of the tribunal we are confined to the record and will not substitute our judgment for its judgment as to the weight of the evidence on questions of fact." *Appeal of Riendeau*, 152 N.H. 396, 398 (2005). We will uphold the tribunal's decision "unless its findings or conclusions are unauthorized, affected by an error of law, or clearly erroneous in view of all the evidence presented." *Id.* We address each argument in turn.

I

The tribunal concluded that although Kaplan was an employee of Kinderworks, he was self-employed according to RSA 282-A:32, I(e), Rule 503.03 and our decision in *Appeal of Hickey*, 139 N.H. 586 (1995). Kaplan argues that the tribunal's conclusion that he was self-employed was clearly erroneous. *See* RSA 282-A:67, V. Specifically, Kaplan contends that the tribunal failed to consider that he was not a majority or controlling shareholder of Kinderworks. Kaplan asserts that, unlike the claimant in *Hickey*, he was a minority stockholder and "did not control the corporation."

New Hampshire's unemployment compensation scheme denies benefits to those whose entrepreneurial businesses fail because of circumstances

beyond their control. *Hickey*, 139 N.H. at 587. RSA 282-A:32, I(e) disqualifies a person who has "left his self-employment or closed his business" from receiving benefits. Rule 503.03(a) provides that an individual is deemed to have left his self-employment or closed his business based upon a showing of three or more of the following criteria:

(1) The individual was a sole proprietor, partner, officer or director, both in name and in fact;

(2) The individual had an investment or was a stockholder;

(3) The individual formed the entity or became involved in the activity in order to create profits, which for purposes of this subparagraph shall include wages, capital gains, dividends, salaries, commissions, bonuses, board, rent, housing, payment in kind, insurance, disability plans, retirement and similar advantages, and benefits;

(4) The individual controlled or had the right to control the business;

(5) The individual had a spouse, parent, child, brother, sister, or step family member of the same relationship who was either an officer, manager, director, investor, stockholder or partner, who controlled or who had the express or implied right to control the business, and said family member either acceded to the decisions of the individual or delegated rights or authority to the individual; or

(6) The individual performed services not required to be done by an officer or director.

In applying this statute and rule, "[w]e look to the plain and ordinary meaning of the statutory language in determining legislative intent." *Appeal of AlphaDirections*, 152 N.H. 477, 482 (2005). "We do not read words or phrases in isolation, but rather in the context of the entire statute." *Id.*

 The tribunal concluded that Kaplan was ineligible for unemployment benefits because he met at least three of the criteria in Rule 503.03(a). Specifically, the tribunal found that Kaplan was "an officer of the corporation, had an investment and was a stockholder, received a salary and benefits from the corporation and performed services not required of an officer." Although Kaplan does not challenge these findings, he argues that the tribunal's conclusion that he was self-employed was clearly erroneous because he was not a majority shareholder in Kinderworks and, thus, did not have a controlling interest in the corporation. This fact, however, is not determinative under the rule where, as in this case, the

300

petitioner satisfied at least three of the rule's criteria. *See* Rule 503.03(a). Thus, the record provides ample support for the tribunal's findings and conclusion that Kaplan was self-employed under Rule 503.03(a).

■ Kaplan further contends that the tribunal's literal application of Rule 503.03(a) effectively precludes officers, directors and shareholders from receiving unemployment benefits. The requirement that an individual meet at least three discrete criteria, however, undercuts this argument. So long as officers, directors, and shareholders do not meet two other criteria in Rule 503.03(a), they remain eligible for unemployment benefits.

■ Finally, Kaplan requests that we revisit our decision in *Hickey*. In *Hickey*, we held that the terms of RSA 282-A:32, I(c) [now codified at RSA 282-A:32, I(e)] were "clear and unambiguous." *Hickey*, 139 N.H. at 588. We thus declined to interpret the statute beyond its plain meaning, which denies unemployment benefits to those who leave their self-employment. *Id.* Kaplan asserts that we should reconsider *Hickey* because our interpretation of the language "left his self-employment" in that case "was not consistent with the unemployment compensation act's purpose," which "afford[s] some degree of protection to" those who are unemployed through no fault of their own. This assertion, however, is insufficient to persuade us to overrule a prior decision. *See Jacobs v. Director, N.H. Div. of Motor Vehicles*, 149 N.H. 502, 504-05 (2003) (setting forth factors that guide our judgment when asked to overrule prior holding). Accordingly, we decline his invitation.

## II

Kaplan next contends that RSA 282-A:32, I(e) and its accompanying regulations violate the Equal Protection Clause of both the Federal and State Constitutions. U.S. CONST. amend. XIV § 1; N.H. CONST. pt. I, art. 12. Kaplan argues that the unemployment compensation scheme violates his right to equal protection because it fails to match equality of burden with equality of compensation. Kaplan also asserts that the statute and regulations lack a rational basis for treating officers, directors and shareholders differently from other employees.

DES argues that Kaplan failed to preserve his constitutional claims for appellate review because he did not raise them before the tribunal. Kaplan responds that his *pro se* letter to the appellate board, alleging in part that DES violated his equal protection rights, adequately preserved his constitutional claims. Moreover, Kaplan asserts that his claims were also preserved in his attorney's statement to the tribunal that it was "improvident and probably inequitable" for the State to collect unemployment benefits from him.

We review decisions of the appeal tribunal "for errors of law, except insofar as that record may have been clarified or the issues limited in the course of subsequent proceedings before the appellate [board]." *Appeal of Pelleteri*, 152 N.H. 809, 811 (2005) (quotation omitted); *see* RSA 282-A:67, V (1999). "On appeal, we consider only issues that have been both timely raised below and preserved for our review." *Pelleteri*, 152 N.H. at 811. "The appellate board provides an intermediate administrative appeal, in which issues previously raised may be waived or narrowed; it does not provide an opportunity to raise new issues for the first time." *Id.* (quotation omitted). Therefore, "[u]nless a claim is raised in the trial forum, there is no opportunity for a party to develop a factual record supporting his theory of relief, or to make an offer of proof sufficient to justify a demand to introduce relevant evidence and preserve an issue for appeal." *Id.* at 812 (quotation omitted).

In *Appeal of Bosselait*, we held that constitutional claims, first presented to the appellate board after the tribunal had reached a final determination, are not preserved for review by this court. *Appeal of Bosselait*, 130 N.H. 604, 607 (1988), *cert. denied*, 488 U.S. 1011 (1989). *Bosselait* also provides that the test to determine if a constitutional claim was sufficiently raised at the tribunal level is whether the claim was "sufficient to put anyone on notice that [the employee] thereby meant to raise a constitutional issue." *Id.* at 607. In *Bosselait*, we held that the petitioner's statement to the tribunal that a statute "was discriminatory against the aged" was not sufficient to put DES on notice of his intention to raise a constitutional claim because the petitioner did not express "the view that the statute was therefore invalid as working a denial of equal protection." *Id.* Similarly, in *Pelleteri*, we held that the petitioners' "generalized assertions of unreasonableness" did not constitute "sufficient notice that they were raising constitutional claims." *Pelleteri*, 152 N.H. at 812.

Kaplan's argument that his *pro se* letter to the appellate board preserved his claim fails because the letter was sent after the tribunal had reached its final determination. Kaplan's *pro se* status at the time he sent the letter does not excuse his failure to preserve his claims. *See State v. Porter*, 144 N.H. 96, 100-01 (1999) (citing the general principle that "rules of preservation are not relaxed for a *pro se* [litigant]"). Like the petitioners in *Bosselait* and *Pelleteri*, Kaplan failed to sufficiently articulate his constitutional claims before the tribunal. Kaplan's attorney stated to the tribunal that DES "inequitably and probably improvidently" collected unemployment premiums from him. However, neither Kaplan nor his counsel linked these allegations to the assertion that DES had thereby

violated his right to equal protection. Accordingly, Kaplan did not give the tribunal sufficient notice that he would be raising an equal protection claim. We conclude, therefore, that the constitutional issues were not preserved for our review. *Cf. Pelleteri*, 152 N.H. at 812.

## III

Finally, Kaplan urges us to rule that, even if he did leave his self-employment or close his business within the meaning of RSA 282-A:32, I(e), he is entitled to all unemployment contributions made by Kinderworks on his behalf from 1984 to 2004. DES counters that, at best, Kaplan's refund claim is premature as he has yet to exhaust the administrative remedies prescribed by RSA 282-A:149 (1999).

█ Under RSA 282-A:149, employers who seek adjustment or refund of unemployment contributions must file an application with the commissioner. The record is devoid of any indication that either Kaplan or Kinderworks, assuming either is eligible to do so, ever filed an application for adjustment or refund of employer contributions pursuant to RSA 282-A:149. Kaplan has cited no persuasive reason why he should not have to submit to the refund application process. Accordingly, the refund claim is not properly before us.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.