Department of Employment Security
No. 2009-705

## APPEAL OF ROY W. BROOKS
### (New Hampshire Department of Employment Security)

Argued: October 28, 2010
Opinion Issued: February 23, 2011

458

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the petitioner.

*Michael A. Delaney*, attorney general (*Anthony I. Blenkinsop*, senior assistant attorney general, on the brief and orally), for the New Hampshire Department of Employment Security.

DUGGAN, J. The petitioner, Roy W. Brooks, appeals a decision of the appeal tribunal (tribunal), as affirmed by the appellate board, of the New

Hampshire Department of Employment Security (DES) finding him ineligible for unemployment benefits because he was discharged for misconduct connected with his work. *See* RSA 282-A:32, I(b) (2010). We affirm.

The record supports the following facts. Brooks began working for James B. Dooley, who operated a small plumbing and heating business, as a full-time plumber in early 2008. Brooks was a good employee with no prior disciplinary issues. On Friday, January 2, 2009, Brooks was working on a project at Townhomes of Beverly in Beverly, Massachusetts. Dooley called Brooks at the end of his workday and asked Brooks to be "on-call" for the weekend to cover any emergencies because Dooley was in Maine for the weekend. Dooley anticipated a large number of service calls for frozen pipes because of predicted cold weather throughout the weekend and expected Brooks to handle these calls. Brooks testified that he was confident he would be called during the weekend, but not again that day. Brooks left the worksite at 3:30 p.m. and arrived at home in Manchester at approximately 4:45.

Brooks then received a call around 5:00 p.m. from Townhomes' management company, asking him to return to deal with frozen pipes. Brooks could not drive because of a suspended license and asked a co-worker, Phil Sties, to drive him to Beverly. Brooks and Sties arrived at Townhomes around 6:15. After they arrived, a Townhomes maintenance worker reported smelling alcohol on Brooks's breath. Dooley then received a call from Townhomes around 7:30, informing him that Brooks was under the influence of alcohol. Dooley called Brooks, and Brooks told him that he had had "a couple drinks," but was not drunk. Dooley's wife also heard the conversation over a speakerphone, and testified that Brooks said that he "had had a couple when he had gone home." However, Brooks testified that he told Dooley that he had one drink at home.

Dooley also spoke with Sties, who told Dooley that Brooks had been drinking, but was not drunk. Brooks told Dooley he would take a breathalyzer to prove he was not drunk, but Dooley told Brooks to leave the job site to avoid any further confrontation. Dooley did not have a written policy regarding either "on-call" status or reporting to work under the influence of alcohol because his policy was for employees to use "common sense." Dooley subsequently terminated Brooks solely because of the Townhomes customer complaint.

Brooks applied for unemployment benefits, but DES denied his application because he was discharged for misconduct connected with his employment. Brooks appealed and the tribunal held a hearing at which only Brooks, Dooley and Dooley's wife testified. The tribunal affirmed the denial of benefits because it concluded that Brooks reported to work under the

influence of alcohol. The tribunal found that Brooks had "a couple of drinks" based upon the sworn testimony of Dooley's wife and a report of a maintenance worker that Brooks's breath smelled of alcohol. While it was not explicitly relied upon in the tribunal's decision, the tribunal accepted into evidence, over Brooks's objection, a memorandum from Townhomes' property manager, which indicated that Brooks was staggering, slurring his words, and that he urinated in the patio of one of the units. Finally, the tribunal concluded that although Dooley did not have a written manual or employee handbook, he had a legitimate expectation that Brooks would not report to work under the influence of alcohol, and that Brooks should have realized that being "on-call" meant being "ready to report for work in a condition to work."

Brooks then filed a motion to re-open the tribunal decision based upon newly discovered evidence, which was denied. Brooks subsequently appealed to the appellate board, which sustained the tribunal's ruling. Brooks's motion for reconsideration was also denied. This appeal followed.

On appeal, Brooks first argues he could not have "deliberately" violated his employer's rules because his employer did not have written or oral company policies outlining the duties of an "on-call" employee regarding alcohol consumption. He also asserts that Dooley did not sustain his burden of proof that Brooks was under the influence of alcohol when he arrived at the job site.

In reviewing the decision of the tribunal, we are confined to the record and will not substitute our judgment for its judgment as to the weight of the evidence on questions of fact. RSA 282-A:67, IV, V (2010); *Appeal of Riendeau*, 152 N.H. 396, 398 (2005). We will uphold the decision of the tribunal unless its findings or conclusions are unauthorized, affected by an error of law or clearly erroneous in view of all the evidence presented. RSA 282-A:67, V; *Appeal of Riendeau*, 152 N.H. at 398.

New Hampshire's unemployment compensation system is predicated upon benefits being paid to those who become unemployed through no fault of their own. *Appeal of Riendeau*, 152 N.H. at 398. No benefits are to be paid, however, to an employee who is terminated as a result of "misconduct connected with his work." RSA 282-A:32, I(b).

We have previously rejected a definition of misconduct that requires proof of willful and wanton disregard of an employer's interests. *Appeal of Riendeau*, 152 N.H. at 398. Instead, we have adopted a less stringent two-pronged definition of misconduct applicable to RSA 282-A:32, I(b). *Id.* Under the first prong, isolated or inadvertent instances of unsatisfactory conduct are not sufficient for a finding of misconduct, but recurring careless or negligent acts do constitute misconduct. *Id.* The negligence need not be

of such a degree or recurrence as to manifest wrongful intent or evil design or to show intentional and substantial disregard. *Id.* However, under the second prong, a single act may be sufficient to support a finding of misconduct if it is a deliberate violation of a company rule that is reasonably designed to protect the legitimate business interests of the employer. *Id.*

Brooks argues that the tribunal erred in finding that he was discharged for misconduct under the second prong. He asserts that a denial of benefits pursuant to RSA 282-A:32 requires evidence that he "acted in a manner . . . which he knew to be contrary to established company rules." Accordingly, he contends that his actions did not constitute a deliberate violation of company policy because Dooley did not have a written or oral policy regarding alcohol consumption for on-call employees.

The tribunal specifically found that while Dooley did not have a written policy or an employee handbook, he still had a "legitimate expectation that [Brooks] be in a condition to be able to work." Dooley testified that his policy regarding reporting to work under the influence was "common sense," and that he had never had a discussion regarding alcohol with Brooks because there "never was an alcohol problem." The tribunal also discounted Brooks's excuse that he had never been "on-call" before because he "knew or should have realized that being on call meant" being prepared to report to work in an acceptable condition. Accordingly, the tribunal concluded that Brooks's actions constituted a deliberate violation of the conduct required by his employer.

Based upon these findings, we cannot say that the tribunal incorrectly applied the definition of "misconduct." The tribunal took into account Brooks's argument that he was unaware of the expectations of an "on-call" employee and that Dooley never provided him with a written "on-call" policy, and found it to be "self serving." As a factual matter, the record provides ample support for the tribunal's conclusion that as a mature individual and an experienced plumber, Brooks knew or should have known that his employer had a legitimate expectation that he would be prepared to work if called upon.

Moreover, as a matter of law, we decline to read into RSA 282-A:32 a requirement that an employee can deliberately violate a company policy only if such a policy is previously disclosed to the employee. Such a narrow view is inconsistent with the statute, which does not limit "misconduct" to a violation of an employer's written or specifically disclosed rules. Reading such a requirement into the statute would force employers to provide their employees with notice of every potential form of "misconduct" that could result in their termination and subsequent denial of benefits. Additionally, Brooks's reading is contrary to the purpose of the statute, which is to

provide benefits to individuals who have become unemployed through *no fault of their own. Appeal of Riendeau,* 152 N.H. at 398. Accordingly, we hold that under the second prong of our definition of "misconduct," company rules are not limited to specifically disclosed rules and policies.

■ We also emphasize that Brooks's argument ignores a key phrase of the second prong of our test for finding "misconduct." A single act may be sufficient to support a finding of misconduct if the company rule is "reasonably designed to protect the legitimate business interests of the employer." *Id.* Here, while the tribunal did not make any specific findings regarding this issue, there is ample support in the record that a prohibition on reporting to work under the influence of alcohol protected Dooley's legitimate business interests. Dooley testified that a customer complained that Brooks was under the influence of alcohol and wanted Brooks removed from the property. He also testified that the customer did not want Brooks on the property again in the future. As a result of Brooks's misconduct, the customer had to call another plumbing company to rectify the frozen pipes. Based upon this testimony, the tribunal could have concluded that Dooley was harmed not only by a potential competitor being called to take over the job, but also by the risk of damaging his relationship with a customer and harm to his reputation in general. *See id.* at 399 (explaining that when a convenience store employee sold cigarettes to a minor, the employer was harmed by a monetary fine, damage to its reputation and the risk of losing its cigarette sales license).

Nonetheless, Brooks points to our prior case law interpreting RSA 282-A:32. He contends that in all of the cases in which we have affirmed the tribunal's finding of "misconduct," the claimant failed to comply with a written policy. *See, e.g., Appeal of N.H. Sweepstakes Commission,* 130 N.H. 659 (1988) (employee terminated for violating newly-enacted written policy that an employee could not take company records from work premises without supervisory approval); *Appeal of Riendeau,* 152 N.H. 396 (employee terminated for violating written company policy regarding sale of tobacco to minors). While the claimants in these cases violated written policies, we affirmed the tribunals' decisions because the records in both cases supported the tribunals' findings of misconduct. *Appeal of N.H. Sweepstakes Commission,* 130 N.H. at 665; *Appeal of Riendeau,* 152 N.H. at 399. Our decisions in these cases did not rest upon the fact that the policies were in writing or expressly communicated to the employee prior to the infraction.

Brooks also relies upon our decision in *Appeal of Lakeview NeuroRehabilitation Ctr.,* 150 N.H. 205 (2003), and contends that we affirmed the tribunal's grant of benefits because the claimant had not

violated any written policy. Contrary to Brooks's argument, we affirmed the tribunal's decision because its factual findings indicated that the claimant did not engage in any misconduct at all. *Id.* at 209-10. Instead, the tribunal found that the claimant "could not be faulted for his inability to perform his job functions" because of a medical condition. *Id.* at 210.

■ Finally, Brooks argues that the tribunal erred when it concluded that Dooley had sustained his burden of proof that Brooks was under the influence of alcohol. Brooks asserts that the tribunal erred in basing its decision upon unsworn, hearsay evidence. We disagree. The tribunal was within its discretion to admit hearsay evidence because the rules of evidence do not apply in adjudicative proceedings. RSA 541-A:33, II (2007). Additionally, as a matter of fact, the tribunal found that Brooks reported to work under the influence of alcohol. The finding is supported by sworn testimony that Brooks admitted to having "a couple of drinks" and that a property manager reported the smell of alcohol on Brooks's breath. Based upon this evidence, the tribunal concluded that the employer's testimony was more credible than the claimant's testimony. The record thus supports the tribunal's conclusion that Brooks reported to work under the influence of alcohol and we cannot say that the determination was clearly erroneous.

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.